McCONWAY AND TORLEY
CORPORATION,
Petitioner,

v.

WORKMEN'S COMPENSATION
APPEAL BOARD (DIAZ),
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 18, 1995.
Decided Jan. 8, 1996.

Audrey L. Jacobsen, for petitioner.

John J. Speicher, for respondent.

Before DOYLE, and FRIEDMAN, JJ.,
and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Ceferino Diaz (Diaz) filed three petitions with the Bureau of Workers' Compensation: 1) a petition to review compensation benefits (review petition); 2) a claim petition; and 3) a penalty petition. McConway and Torley Corporation (Employer) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) that affirmed the decision of the Workers' Compen-

sation Judge (WCJ) which granted both the review and claim petitions of Diaz.[1] We will address each petition separately.[2]

### REVIEW PETITION

The facts relating to the review petition are as follows. Diaz was injured within the course and scope of his employment on August 29, 1988 when he slipped and fell. Pursuant to a notice of compensation payable issued on September 19, 1988, Diaz received total disability benefits for a fractured right ankle. Diaz returned to light duty work from September 5, 1989 through September 27, 1989 during which time he received partial disability benefits; Diaz's total disability recurred as of September 28, 1989.[3] Diaz again returned to light duty work on March 18, 1991, worked an eight hour shift, but has not worked since.

In the review petition, Diaz sought to have the September 19, 1988 notice of compensation payable amended to reflect injuries to his knee and lower back.[4] With particular regard to his knee, Diaz sought to have included a condition known as pigmented villonodular synovitis which is a tumor found in the tendon sheath or in the joints (hereinafter tumor).[5] The WCJ, as affirmed by the Board, granted the review petition and ordered that the notice of compensation payable should be amended to reflect the nature of injury as "fractured right ankle and right knee." The WCJ also ordered that Employer is to continue payment of compensation benefits in the amount of $330.40 per week and remains responsible for all reasonable and necessary medical expenses related to the work injury including the tumor in Diaz's right knee. While Employer does not con-

test that Diaz sustained a fractured right knee as a result of his work-related injury on August 29, 1988 and thereby concedes that the notice of compensation payable should be amended to reflect the same, Employer does object to any such amendment which would encompass the tumor in Diaz's right knee.

When asked to give his opinion whether or not the injuries to Diaz's right knee were caused or aggravated by the work injury on August 29, 1988, Gary C. Canner, M.D. (Dr. Canner), Diaz's treating physician, testified that the tumor found in the right knee is related to the injury of August of 1988. (R.R. 69a). However, when further asked to state the basis of his opinion specifically relating to the tumor, Dr. Canner testified as follows:

A. The tumor, which is called a pigmented villonodular synovitis, is a tumor which can occur—It's a benign tumor, but it's one that recurs. And the primary problem with the tumor is that it is recurrent and keeps coming back despite efforts to remove it. It can be found in tendon sheaths and it can be found in joints. *The etiology that has been suggested by the experts—* and I have actually Aegerter & Kirkpatrick, which is a textbook of orthopedic diseases, primarily tumors, states that—

. . . .

THE WITNESS: That this is a book which is utilized in all training programs in the country, that stating and reading from the book, because of large amounts of hemosiderin pigment and lipid that are phagocytized by the synovial covering cells, *it has long presumed* that this process was a reaction to tendon—to hemorrhage within

---

1. The WCJ, as affirmed by the Board, denied Diaz's penalty petition. Diaz did not petition for review of the Board's decision and order dismissing his appeal.

2. Our scope of review is limited to determining whether constitutional rights have been violated, an error of law committed, or whether necessary findings of fact are supported by substantial evidence. *Blue Bell Printing v. Workmen's Compensation Appeal Board (Montgomery Publishing Co.),* 115 Pa.Cmwlth. 203, 539 A.2d 933 (1988).

3. Diaz initially received compensation at the rate of $306.09 per week based on his weekly wages

of $459.14. Pursuant to a series of supplemental agreements, that amount was modified to the current amount of $330.40.

4. The alleged injuries to Diaz's lower back are the same as those asserted in his claim petition which we will address infra.

5. The tumor or pigmented villonodular synovitis is also referred to as PVS; although the tumor is benign, it can recur and keeps coming back despite efforts to remove it. *See* WCJ's Finding of Fact No. 8.

the tendon sheath or joint. What that means is that in reaction to an injury and with that injury bleeding, that the body's attempt to get rid of the byproducts of the injury from either the tendon sheath or the joints, that the cells that are trying to clean this up or phagocytize this, that they become this recurrent synovial tumor. *Again, this is—this has neither been proven or disproven, but this is just simply the present concept of how these tumors start.* (Emphasis added).

(R.R. 69a). Dr. Canner further testified on cross-examination as follows:

Q. Is your opinion concerning how the tumor developed from the scar tissue based on the book from the article of Dr. Kirkpatrick?

A. Well, it's not just an article. I mean, this is—I, mean, if we could go through any one of the books on disease and tumors, they would all—this is an accepted etiology. *It's an accepted etiology, but it's not proven.* They did not take rats and make scar tissue in their knee and then look to see if they developed pigmented villonodular synovitis. *So there's no way really to prove that as an etiology.* However, in reviewing the arthroscopy reports and then reviewing that and using—And this is what we do typically, is we use to the best of our knowledge. *I mean, this is not as fact. This is a medical opinion with the information that we have.*

Q. So it's not proven or disproven?

A. *It's impossible to prove it or disprove it as far as the question, does pigmented villonodular synovitis come in response to an injury. You cannot prove that.* Again, you would have to create a setup where you have a model, create an injury, and determine whether or not the tumors come from that. And that study has not been done.

Q. So in your own words, please explain to the referee how the tumor developed from the trauma.

A. That in my own words, in response to an injury, okay. And we're advised that the patient had an injury to his right knee at the same time he injured his ankle. And this is by what the patient tells

me.... So this is not unusual in talking about tumors in the body, that it can occur from an area where there has been an injury. But then as a result of that injury, then this tumor gradually came from that. (Emphasis added).

(R.R. 72b).

Robert W. Mauthe, M.D. (Dr. Mauthe), testifying on behalf of Employer, when questioned about the relationship between the tumor and the work injury sustained on August 29, 1988, opined as follows:

A. Based on the information I have available to me now, it is my opinion that *there is no relationship between the tumor* found at the second arthroscopic procedure *and his original work-related injury August 29, 1988.*

Q. Now, that opinion is within a reasonable degree of medical certainty?

A. Yes.

Q. That's based on your review of records, doctor, the history, and your physical examinations. Anything else?

A. And a review of the recent literature.

Q. Okay. What recent literature are you referring to?

A. When I read Dr. Canner's deposition, I noted that he was quoting from a textbook, and I read that article and have known for a long time that *pigmented villonodular synovitis is a very rare entity of which there is no known cause.* (Emphasis added).

(R.R. 140a). Dr. Mauthe further testified as follows:

Q. Doctor, upon reviewing the medical bills in this case, it appears that Mr. Diaz has had quite a bit of treatment relating to this condition, the pigmented villonodular synovitis.

Do you have an opinion within a reasonable degree of medical certainty as to whether or not that treatment is related to any work injury—is related to the work injury that the claimant sustained on August 29 of 1988 or Mr. Diaz's employment with McConway & Torley?

A. Yes, I have an opinion.

Q. What is that opinion, doctor?

A. It is my opinion within a reasonable degree of medical certainty that the treatment itself for the tumor, PVSN, is not related to his work-related injury of 8/29 of 1988.

(R.R. 143a).

The WCJ made the following credibility determinations regarding the aforementioned medical testimony:

[t]his Judge finds the opinions of Dr. Canner and Dr. Mauthe to be persuasive and credible pertaining to claimant's pigmented villonodular synovitis (tumor) on his right knee *insofar as that etiology of this particular tumor is unknown at this time. The rest of their testimony as it concerns the right knee tumor, is not credible or worthy of belief....* (Emphasis ours).

(WCJ Finding of Fact No. 28). Despite having accepted both medical experts' opinion that the etiology of the tumor is "unknown" and despite having rejected the balance of their testimony relating to the tumor as not credible or worthy of belief, the WCJ found that there was an *obvious* causal connection between the tumor and Diaz's work-related injury of August 29, 1988 for the following reasons:

1. prior to his work related injury, the claimant never had problems with his right knee;

2. Dr. Canner found the pigmented villonodular synovitis in *exactly* the same spot where he found scar tissue during the first arthroscopic surgery of the claimant's right knee on November 8, 1989; and

3. Dr. Mauthe's opinion that claimant has sustained a right patella fracture of his right knee as a consequence of his work related accident. (Emphasis in original).

The WCJ then concluded that Employer, by failing to establish that the tumor is not related to the original work injury, did not meet its burden of proof.[6]

■ As previously noted, however, the WCJ specifically rejected all of both Drs. Canner's and Mauthe's testimony "as it concern[ed] the right knee tumor" other than that the etiology of said tumor was "unknown." Reason number 2 listed above and relied upon by the WCJ for finding an obvious causal connection, i.e., Dr. Canner's testimony that he found the tumor in exactly the same spot where he found scar tissue during the first arthroscopic surgery of Diaz's knee, was found by the WCJ as not being credible; thus, reason number 2 cannot serve as a basis for a finding of causation. The WCJ's finding of an obvious causal connection is without foundation in fact and law.

■ An obvious relationship exists where the claimant's injuries immediately and directly or naturally and probably result from a work incident. *See Metelo v. Workmen's Compensation Appeal Board (Old Original Bookbinders Restaurant),* 164 Pa.Cmwlth. 348, 642 A.2d 653 (1994). Thus, we have often recognized an obvious causal connection between a work incident and injury where the onset of pain immediately and directly followed the incident[7] or where the disability is the natural and probable consequence of an injury, although the disability is not immediately manifested. *Id.* In such cases, the fact finder is not required to depend alone, or at all, upon medical testimony to find the causal connection. *Id.*

The WCJ accepted as credible both the opinions of Drs. Canner and Mauthe only in so far as the etiology of this particular type of tumor is unproven. The fact that Diaz never had problems with his right knee prior to his work incident, during which he sustained a fracture of his right patella, is of no consequence. The existence of these facts alone does not establish the obvious causal connection between the right knee tumor and the work incident which would enable the

---

**6.** We note that it is well established that where the causal connection between the alleged injury and the employment is not obvious, the claimant and not the employer bears the burden of establishing that link through unequivocal medical testimony. *Shelestak v. Workmen's Compensation Appeal Board (Bethlehem Mines Corp.),* 131 Pa. Cmwlth. 582, 571 A.2d 516 (1990).

**7.** *See Morgan v. Giant Markets, Inc.,* 483 Pa. 421, 397 A.2d 415 (1979).

WCJ to make such a determination and thereby relieve Diaz of the burden of establishing that link through unequivocal medical testimony. *See Shelestak,* 571 A.2d 516 (Pa. Cmwlth.1990).

While there is no dispute that the notice of compensation payable should be amended to reflect that Diaz fractured his right knee as well as his ankle and that the Board did not err in affirming the granting of the same by the WCJ, the Board did err in affirming the decision of the WCJ in as much as it held Employer liable for benefits and medical expenses occurring as a result of the tumor in Diaz's knee. Accordingly, the order of the Board in affirming the WCJ's grant of benefits and medical expenses for the tumor in Diaz's right knee will be reversed.

### CLAIM PETITION

The facts relating to the claim petition are as follows. Prior to returning to work with Employer in March of 1991, Diaz had been treated for low back pain in August of 1984. While performing light duty work with Employer on March 18, 1991, a job which required him to be sitting for eight (8) consecutive hours, Diaz experienced pain in his lower back. Diaz completed his shift, reported his pain to Lisa Padilla (Padilla), personnel administrator for Employer, and has not worked since. Diaz went to Dr. Canner's office on March 20, 1991 with symptoms of sciatica in his right leg. In his claim petition, Diaz sought disability benefits for his low back pain which allegedly reoccurred on March 18, 1991.

■ Employer argues that Diaz failed to provide timely and adequate notice of his alleged low back injury. The WCJ accepted Diaz's testimony as credible and as a result thereof found that he gave notice to Employer when he informed Padilla of his back pain. (WCJ Findings of Fact Nos. 9, 27 and 29). Where, as here, the WCJ's findings are based upon substantial evidence [8], we will not overturn the same. *Rawling v. Workmen's Compensation Appeal Board,* 51 Pa.Cmwlth. 385, 414 A.2d 447 (1980).

Employer also argues that the claim petition should not have been granted because Diaz further failed to establish by substantial evidence that he suffered a disability as a result of the alleged back injury [9]; however, we are unable to address Employer's contention in this regard for reasons which we will now explain.

The WCJ accepted the testimony of Dr. Canner as credible [10] and found that Diaz aggravated a pre-existing condition in his low back, which caused his sciatica or low back pain, as a result of sitting for eight (8) consecutive hours on March 18, 1991.[11] (WCJ

---

8. Substantial evidence is defined as such relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Gamble v. Workmen's Compensation Appeal Board (Burrell Construction and Supply Co.),* 143 Pa.Cmwlth. 277, 598 A.2d 1071 (1991); *Wittco Fashions v. Workmen's Compensation Appeal Board (O'Neil),* 118 Pa.Cmwlth. 126, 544 A.2d 559 (1988); *Gallo v. Workmen's Compensation Appeal Board (United Parcel Service),* 95 Pa.Cmwlth. 158, 504 A.2d 985 (1986). Evidence is relevant if it tends to make the fact at issue more or less probable and in some degree is probative and advances the inquiry. *Commonwealth v. Gonzalez,* 519 Pa. 116, 546 A.2d 26 (1988).

9. It is well established that the burden of proof in a workmen's compensation claim petition proceeding rests on the claimant to demonstrate not only that he has sustained compensable injury, but also that the injury continues to cause disability throughout the pendency of the claim petition. *Innovative Spaces v. Workmen's Compensation Appeal Board (DeAngelis),* 166 Pa. Cmwlth. 141, 646 A.2d 51 (1994); *Berks County Intermediate Unit v. Workmen's Compensation*

*Appeal Board (Rucker),* 158 Pa.Cmwlth. 305, 631 A.2d 801 (1993) (claimant has burden of establishing all elements necessary to support an award and claimant must therefore not only establish injury but also must prove that injury caused her to be disabled).

10. The WCJ's credibility determination of Dr. Canner and Dr. Mauthe as to Claimant's petition for review did not extend to Claimant's claim petition.

11. Dr. Canner testified that when Diaz sat for eight (8) consecutive hours on March 18, 1991, he aggravated a pre-existing low back condition which caused his sciatica. (R.R. 69b–70a, 73a). Dr. Mauthe had opined that Diaz did not sustain a work-related injury to his low back in March of 1991 nor does he suffer from sciatica. (R.R. 145a–146a). With regard to the aforementioned medical testimony concerning Diaz's low back pain or sciatica, the WCJ made the following credibility determination:

[t]his Judge finds the opinion of Dr. Canner, as it concerns the low back pain or sciatica of the

Findings of Fact Nos. 11 and 29). Based on these findings, the WCJ concluded that Diaz suffered a new injury, aggravation of his low back pain or sciatica, on March 18, 1991 and therefore met his burden of proof as it relates to the claim petition. *See* (WCJ Discussion of Findings and WCJ Conclusion of Law No. 3). The WCJ then ordered, in pertinent part, as follows:

> 1. The review petition is granted, the nature of the injury should read "fractured right ankle and right knee".
>
> . . . .
>
> 3. The defendant is ordered to continue payments of compensation benefits in the amount of $330.40 per week, and remains responsible for all reasonable and necessary medical expenses related to *the work injury* including the pigmented villonodular synovitis or tumor in his right knee. . . . (Emphasis added).

In so doing, the WCJ ordered that Diaz was to continue to receive total disability benefits; however, the WCJ failed to distinguish under which of the petitions such benefits were awarded. A review of the findings of fact and the conclusions of law reveals that the WCJ found three distinct work incidents— two of which occurred on August 29, 1988 (fractured right ankle and knee), and one of which occurred on March 18, 1991 (low back pain and sciatica). In his order the WCJ makes single reference to the expenses related to the "work injury." Since at the time of the WCJ's order, Diaz was already receiving total disability benefits under the September 19, 1988 notice of compensation payable [12] and Employer was thereafter merely ordered to continue paying the same, it is not clear whether or not the WCJ ever made a determination as to disability with respect to the claim petition and that such disability, if any, was to be compensated within the $330.40 per week already being paid for the right ankle and knee work injury. The only thing which is apparent from the record is that the WCJ correctly concluded that Diaz had been

injured while at work on March 18, 1991; whether such injury caused Diaz to be disabled, in any way, is unknown.

The amount of Diaz's compensation will not change if the claim petition is denied as compared to being granted since he was already receiving total disability benefits under the September 19, 1988 notice of compensation payable which continues in effect; however, if it is determined that Diaz is not disabled as a result of his March 18, 1991 injury, Employer would not be liable for the medical expenses related to his low back pain and sciatica. Accordingly, we will remand to the Board with directions to remand to the WCJ for further proceedings to determine whether as a result of being injured on March 18, 1991, Diaz was disabled and, if so, the nature and extent thereof.

### ORDER

AND NOW, this 8th day of January, 1996, it is hereby ordered as follows:

A) Review Petition—

The order of the Workmen's Compensation Appeal Board affirming the Workers' Compensation Judge in granting Ceferino Diaz benefits and expenses for the pigmented villonodular synovitis in his right knee is reversed.

B) Claim Petition—

1) The order of the Workmen's Compensation Appeal Board affirming the order of the Workers' Compensation Judge which granted the claim petition of Ceferino Diaz is vacated; and

2) The matter is remanded to the Workmen's Compensation Appeal Board with directions to remand to the Workers' Compensation Judge for further proceedings consistent with this opinion.

Jurisdiction relinquished.

---

claimant, is more persuasive and credible than the testimony of Dr. Mauthe.
(WCJ Finding of Fact No. 28).

**12.** Prior to returning to light duty work on March 18, 1991, Diaz was receiving total disability benefits. Because Diaz was sustained a new injury on that date and did not work thereafter, his benefits were never modified from that other than total disability.

DOYLE, Judge, concurring and dissenting.

I concur with the majority in all but the disposition of the review petition, and from that disposition I respectfully dissent. In this respect I believe that the majority has usurped the function of the Workers' Compensation Judge (WCJ) who, while *generally* rejecting the conflicting medical opinions of both Dr. Canner and Dr. Mauthe, nevertheless obviously accepted the unequivocal evidence that (a) there was a tumor, (b) Dr. Canner found the tumor in exactly the same place where he found scar tissue which was the result of Diaz's work-related injury, and (c) there was no evidence of the tumor before the work-related injury. I specifically disagree with the conclusion of the majority (op. page 1117) that "the fact that Diaz never had problems with his right knee prior to his work incident ... is of no consequence." The majority in reaching this conclusion usurps the most critical function of the WCJ who concluded that the tumor was obviously caused by the work injury, because it was not there before that injury.